# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3  ****************************************************************

 4  IN RE:  VIOXX PRODUCTS
         LIABILITY LITIGATION
 5                                       MDL DOCKET NO. 1657
                                         NEW ORLEANS, LOUISIANA
 6                                       THURSDAY, JULY 6, 2006, 5:30 P.M.

 7  ****************************************************************

 8
                       TRANSCRIPT OF MOTIONS HEARING
 9           HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE
10

11
    APPEARANCES:
12
    FOR THE PLAINTIFF:      HERMAN HERMAN KATZ & COTLAR
13                          BY:  RUSS M. HERMAN, ESQUIRE
                            201 ST. CHARLES AVENUE, SUITE 4310
14                          NEW ORLEANS, LA 70170

15
                            BEASLEY ALLEN CROW METHVIN
16                          PORTIS & MILES
                            BY:  ANDY D. BIRCHFELD, JR., ESQUIRE
17                               P. LEIGH O'DELL, ESQUIRE
                            234 COMMERCE STREET
18                          POST OFFICE BOX 4160
                            MONTGOMERY, ALABAMA 36103
19

20                          ROBINSON CALCAGNIE & ROBINSON
                            BY:  MARK P. ROBINSON, JR., ESQUIRE
21                          620 NEWPORT CENTER DRIVE, 7TH FLOOR
                            NEWPORT BEACH CA  92660
22

23                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                            BY:  DONALD C. ARBITBLIT, ESQUIRE
24                          EMBARCADERO CENTER WEST
                            275 BATTERY STREET, SUITE 3000
25                          SAN FRANCISCO, CA  94111-3339
```

1  might well be admissible. So I just have to focus on that a
2  little bit. I'm not able to give you any guidance tonight.
3       Talk to me about the plaintiffs' move to designate an
4  additional expert, Nicholas Jewell, Ph.D., and biostatistician
5  and professor at the University of California.
6       MR. BECK: Yes, Your Honor. We move to exclude
7  Dr. Jewell. And just by way of background, they have a
8  Dr. Farquhar, who is a cardiologist and an epidemiologist, and
9  he's going to be an expert. And he was timely designated by them
10 as an expert.
11      THE COURT: Yes. I've got your argument. Let me hear
12 from the plaintiffs.
13      MR. ROBINSON: Your Honor, can I speak first of all --
14      THE COURT: There is no question that it comes too late.
15 There is no question that it's going to prejudice because it
16 comes too late. That, to me, seems to be the, if it comes too
17 late, it's prejudicial. It seems to me almost the same thing.
18 You can't take the position that a rebuttal expert, I understand
19 an expert that you properly designated and timely designated can
20 testify rebutting something. I mean, you put him on and he says
21 something, then they put the other expert on and he says
22 something else, and it raises an issue that you hadn't focused
23 on. Conceivably you might be able to use that expert to rebut
24 what the other expert said, but not to bring in a rebuttal expert
25 at the 11th hour. I don't see that. So help me --

1          MR. ROBINSON:  I'm going to let Mr. Arbitblit get the
2     factual setting on it.  As I look at the Code, the Code says that
3     from the date of the filing of the report, so that would have
4     been May 22nd.  We would then have 30 days to file a rebuttal,
5     like a rebuttal expert.  And so I think that's what we did.  And
6     I think that if Mr. Arbitblit is going to explain why.  He took
7     the deposition of their expert.  We were surprised with some of
8     the things they said, and so that's why.
9          THE COURT:  Okay, I'll hear from you.
10         MR. ARBITBLIT:  Thank you, Your Honor.  May it please
11    the Court.  I'll certainly try my best to respond to Your Honor's
12    comments.  I submitted a declaration stating the background on
13    this matter as to the past practice with Dr. Farquhar and the
14    fact that his reliance on biostatistical consultants was part of
15    his pattern of practice, that we saw no need to identify
16    Dr. Jewell as a testifying expert.  We weren't even notified that
17    there was an interest in taking Dr. Jewell's discovery or
18    deposition until May 28th, which was after the May 22nd deadline
19    and the Court's order.
20         THE COURT:  They take the position that you had
21    designated as a nontestifying expert and as such successfully
22    refused to allow the defendants to depose him.  That was on
23    June 14th when you advised the defendants of your decision to
24    convert him from a nontestifying to a testifying expert, and you
25    furnished a report on June 21st that you then said, Okay, take

1  his deposition.
2          MR. ARBITBLIT:  Your Honor, if I could, there is a point
3  in the defense opposition memorandum that suggests that we had
4  taken some position opposing discovery of Dr. Jewell for some
5  period of months, which is simply incorrect.  Dr. Jewell's report
6  on protocol 203, which was the combined analysis of Merck's three
7  studies of Vioxx had been provided to other experts in January,
8  but he was never designated as anything.  His report was given to
9  other experts as something that was part of their reliance
10 materials that they reviewed, and we never heard from Merck about
11 Dr. Jewell, not one word between January and May.  Then we get to
12 our May 22nd deadline, and we hadn't taken any position on what
13 Jewell was, other than someone that was cited in Dr. Farquhar's
14 report as a biostatistics consultant, just as he had relied on
15 Dr. Lavorie (spelled phonetically) and Dr. Ahn (spelled
16 phonetically) in his September 26, 2005, report to which Merck
17 did not seek a deposition or further discovery.  And we
18 voluntarily provided the reliance materials that Dr. Farquhar
19 reviewed.
20         It was only after the deadline passed on May 22nd that
21 we first heard from Merck asking for discovery from Dr. Jewell on
22 May 28th.  And that's Exhibit 3 to my declaration, and that was
23 after the deadline had already past.  Then we got a June 1st
24 report of Dr. Kim who was specifically a biostatistician
25 designated by Merck who included in his report several concepts

that are specifically biostatistical in nature. And that, in the, I think that there is a fairly well-established tradition in the law, certainly that I've seen, that it's fair to have the ability to respond like for like. If the defense identifies a biostatistician who starts talking about a concept of power, for example, it's a very important concept in the whole defense that Merck has now created for whether the results of studies of polyp patients like the APPROVe study can be generalized to people with osteoarthritis.

Well, the basic point that they are trying to make is that there is an inconsistency between the APPROVe data showing increased risk and the Alzheimer's data that doesn't show increased risk. Now, the very key concept for that is the idea that Merck raised for the first time on June 1st through a biostatistician that the Alzheimer's trials were adequately powered to detect the difference. Now, that's never been argued to my knowledge, certainly not brought to my attention in these cases, which I've been trying to follow pretty closely. But they did it through a biostatistician for a reason. Power calculations are designed to tell whether a study has an adequate size and magnitude of effect to detect a difference. The reference manual on scientific evidence, which we've cited, is clear on the point, and Dr. Kim agreed with this at his deposition, that if a study is not adequately powered, then the results are best characterized as inconclusive, not inconsistent

1  because the power is low, the proof is weak.  The point is that
2  this is specifically something that Dr. Jewell is qualified to
3  respond to as a biostatistician to say, Dr. Kim, you got it
4  wrong.  You didn't take into account poor compliance, 39 percent
5  didn't take their Vioxx so you can't judge that.  You can't do a
6  power calculation without including that.
7           So there is a specific point beyond the normal
8  epidemiologic analysis for which they've used a biostatistician.
9  They've also used a biostatistician to try to make the point that
10 for the same reason, based on the Alzheimer's studies and the
11 brand-new study in the British medical journal that was raised,
12 brought into a direct examination by Merck at the deposition of
13 its own expert that I took on June 12th, they used that as an
14 opportunity to elicit affirmative testimony that this brand-new
15 study supported the position that Alzheimer's and polyp patients
16 were different and that supported the inconsistency, which in
17 turn is the foundation for the argument that you can't generalize
18 the data from APPROVe or the polyp studies.
19          THE COURT:  You're talking about whether or not it's
20 legitimate expert material.  It may well be, but the problem that
21 I'm dealing with, really, is that it comes too late.  I mean,
22 look, how, on June 21st, on June 14th, you tell them, for a case
23 that's going to be tried in three weeks or a month afterwards.
24 It's the 21st before they get a report.  And they are going to
25 have to try a case in three weeks.  How is that fair to them?

1        MR. ARBITBLIT: Well, Your Honor, I think that the point
2   with Dr. Jewell's testimony, a lot of this was raised, I would
3   say, tactically.
4            First of all, I would like to go back to Mr. Robinson's
5   point that the Court certainly is, there is no one in this room
6   who could interpret this Court's order other than the Court. We
7   acknowledge that. That's part of the law. We acknowledge that.
8   However, as I understand from Mr. Robinson, the scheduling order
9   was negotiated between Counsel, and it was silent on the issue of
10  a rebuttal. And it would be our position that it would be
11  inappropriate to assume or presume a waiver of a Rule 26 right of
12  rebuttal, which we presumed we would have. I certainly presumed
13  in all good faith that rebuttal reports would be permitted, and
14  Mr. Robinson assured me that there had been no discussion nor
15  waiver of rebuttal rights under the rule. So it's not too late.
16  It's timely under Rule 26.
17       THE COURT: Your understanding of Rule 26 is that you
18  bring in a new expert?
19       MR. ARBITBLIT: That's my understanding, Your Honor,
20  that a rebuttal expert can be brought in within 30 days to
21  address, it doesn't, the rule is not specific that it has to be a
22  formerly named expert who addresses the issues raised by the
23  defense. If the defense raises the issues, and I've tried to lay
24  out in our pleadings and declaration specifically where it was
25  that the defense raised issues to which Dr. Jewell was responding

1   that are biostatistical in nature or that they used their
2   biostatistician to address, Rule 26 does not say that it has to
3   be a previously named expert that addresses those issues.  It
4   says that rebuttal is permitted within 30 days unless otherwise
5   directed by the Court.  We don't, the Court did not otherwise
6   direct, other than to set a scheduling order that was negotiated
7   by the parties.  And in all good faith we assumed that rebuttal
8   would be permitted.  And certainly Mr. Goldman's e-mails saying
9   that the testimony of Dr. Jewell is vital, acknowledging the
10  importance of it.  Even in the *Chorus* (spelled phonetically) case
11  that we've cited where a report was considered not timely, the
12  Court was permitted to, I think the Court permitted the parties
13  to add the expert where there was time to depose before trial.
14  Now, we're in a window where expert depositions are still going
15  on.  Personally, I was given 11 days to take the deposition of
16  Dr. Kim, the defense expert, when Merck did not adhere to the
17  scheduling order, which said depositions will be done by
18  June 8th.  They unilaterally set that on June 12th and told me to
19  come take the deposition then, after having the report for
20  11 days and showed up with a box of his materials on the spot.
21          Now, as far as prejudice, most of Dr. Jewell's opinions
22  that are at issue as far as what Dr. Farquhar relied on, it's all
23  Merck data, Your Honor.  They are not prejudiced in the
24  slightest.  They've had the data throughout.  They've had the
25  biostatisticians who could have analyzed it throughout.  I was

1  thinking of arguing in November about protocol 203, over 7 months
2  ago.  And Merck said, Well, protocol 203, we don't have it.
3         At Dr. Kim's deposition, I asked him whether he planned
4  to do it; the answer was, No.  They've got the data.  They don't
5  want to do the analysis because they don't like what it shows,
6  which is an early and persistent risk of Vioxx compared to
7  placebo.  And then they come in and challenge without evidence,
8  they say, Well, Dr. Jewell, only Dr. Jewell can tell us whether
9  he relied on adequate data, isn't that right, Dr. Farquhar?
10         So, they made a tactical strike to try to undermine
11  Dr. Farquhar's testimony and reliance on the protocol 203
12  analysis without any evidence to support the claim that
13  Dr. Jewell relied on something improper.  And they've got the
14  data, and they've got the biostatisticians, and I think when they
15  invite Dr. Jewell to testify by having their Counsel state, Is
16  Dr. Jewell the only person who could tell us whether that data
17  was sufficient to analyze, is Dr. Jewell the only one who can
18  explain what's the proper p-value for statistical interactions,
19  it would be prejudicial to the plaintiffs to not allow a response
20  that's timely under Rule 26, where the parties never agreed to
21  waive their right to rebuttal.  And I would be happy to answer
22  any specific questions.
23         THE COURT:  No, I understand.  I'll give you an
24  opportunity.
25         MR. BECK:  Your Honor, I think the last few things that

1  Mr. Arbitblit said were really critically important and show why
2  this would be improper as rebuttal testimony.  Here is what they
3  are worried about.  Rebuttal testimony is supposed to rebut
4  something that our expert is saying.  What they are worried about
5  is rebutting our cross-examination of their expert.  But what
6  they said is when we cross-examine Dr. Farquhar and we said,
7  Dr. Farquhar, you're relying on Dr. Jewell, but you haven't
8  checked his work, they want a rebuttal expert to come in, not to
9  rebut something that our expert said, but to rebut a gap that
10 they had in their other expert.  And rule, the federal rule on
11 rebuttal experts, 26(a)(2)(C), says that rebuttal reports contain
12 information, "intended solely to contradict or rebut evidence on
13 the same subject matter identified by another party under
14 paragraph 2 as," and then it goes on as expert testimony.
15          So, this isn't even real life rebuttal.  And it is
16 prejudicial that late in the game, having declined our invitation
17 to let us take Jewell's deposition, they then try to turn him
18 into a testifying expert.  And we are prejudiced by that,
19 Your Honor.  It is untimely.  And the notion that, well, the
20 order can be read to contemplate brand-new rebuttal experts, that
21 just doesn't make any sense in terms of the real-life schedule.
22          THE COURT:  I understand the issue.  I'm going to deny
23 the motion to designate an additional expert, Nicholas Jewell, as
24 a biostatistician and professor at the University of California
25 at Berkeley.  I think it comes too late.  It's prejudicial.  And

```
 1  I do think it's, I think that the 703 will allow Dr. Farquhar to
 2  explain that situation and deal with it.  I don't see this even
 3  as a rebuttal expert.  In any event, I feel it comes too late.
 4             Okay, what's the next motion we have to deal with?  I
 5  understand that Bryan, that's been worked out.
 6             MR. BECK:  That we submitted on papers, Your Honor.
 7             THE COURT:  I thought that was agreed on.
 8             MR. GOLDMAN:  Flavahan was agreed upon.  We withdraw
 9  drew our motion on Farquhar.  They withdrew theirs on Flavahan.
10  I think the only *Daubert* motion left is Bryan.
11             THE COURT:  I have before me the plaintiffs' proposal to
12  call by deposition Dr. Curtis Bryan, the surgeon who performed
13  heart surgery on Gerald Barnett.  The plaintiff took his
14  deposition and the defendant cross-examined the doctor.  The
15  plaintiff seeks to exclude certain portions of Dr. Bryan's
16  deposition on the grounds that the defendant seeks to use
17  Dr. Bryan as an expert and they have not been given a report.
18  And two, Dr. Bryan cannot satisfy *Daubert* as to certain areas
19  covered by the defendant.  Basically what the motions --
20             MR. ROBINSON:  Your Honor, maybe if the Court, maybe if
21  you haven't really read my reply brief, the most recent brief --
22             THE COURT:  I didn't.
23             MR. ROBINSON:  I really think maybe we should put this
24  off until tomorrow because I think that that says, if you haven't
25  had a chance to read it, then maybe we could do that tomorrow.
```

1     THE COURT:  All right.  We'll do that.
2     MR. BECK:  Then, I think, Your Honor --
3     MR. GOLDMAN:  I'm sorry, I don't think there was a reply
4  brief in the Bryan motion.
5     MR. ROBINSON:  Yeah, I filed a reply brief.
6     THE COURT:  Did you get it?
7     MR. GOLDMAN:  No, no.  Judge, I think there is a
8  misunderstanding.  The Bryan motion was fully briefed.  The brief
9  that you filed last night has to do with treating physicians in
10 general.  That's not the Bryan *Daubert* motion.
11    MR. ROBINSON:  No, there is a Bryan reply brief.
12    MR. GOLDMAN:  All right.  I'll look for it.
13    MR. ROBINSON:  I wasn't sure whether the Judge had a
14 chance to see it.
15    THE COURT:  I haven't seen it.
16    MR. BECK:  Could you, did you e-mail us a copy, too.
17    MR. GOLDMAN:  Well, Andy doesn't think he does.
18     Would you send it to us so we can argue it tomorrow,
19 Judge.
20    THE COURT:  What else do we have for tonight?
21    MR. BECK:  I think that's it for tonight, Your Honor.
22    MR. ROBINSON:  Your Honor, it's 8:30.
23    MR. BECK:  So we'll be here at 9:00 a.m.
24    THE COURT:  Yes.  And at 9:00 a.m., we'll talk about
25 your pretrial order and I've got some documents.  Do you need to

1  argue the documents or not?
2         MR. GOLDMAN:  Judge, the documents, I think there is
3  only five.  And I think if Your Honor gave us guidance on those,
4  that would help us with respect to other --
5         THE COURT:  I'll do that.  I really don't need any
6  argument on these.  I understand them.
7         MR. ROBINSON:  Your Honor, one thing.  One thing, I
8  mean, I didn't respond or anything to that.  I thought I was
9  going to be orally responding to the documents.
10        THE COURT:  That's fine.
11        MR. ROBINSON:  Your Honor, one other thing, we can do
12 this tomorrow, well, we can do it as part of the pretrial.  I've
13 started, I have some, quote, admissible documents.  We hope they
14 are admissible.  And I gave Andy a list and I sent the Court a
15 list and I brought a set of the documents and I Fed-Ex'd a set to
16 Mr. Goldman.  But we don't expect --
17        THE COURT:  Okay.
18        MR. BECK:  We all thank you, Judge.
19        MR. ROBINSON:  Thank you.
20        THE COURT:  See you tomorrow.  Court will stand in
21 recess.
22        THE DEPUTY CLERK:  Everyone rise.
23        (Whereupon, at 8:34 p.m. court was adjourned.)
24                        *    *
25

1          REPORTER'S CERTIFICATE

2

3      I, Cathy Pepper, Certified Realtime Reporter, Registered
4  Professional Reporter, Certified Court Reporter, Official Court
5  Reporter, United States District Court, Eastern District of
6  Louisiana, do hereby certify that the foregoing is a true and
7  correct transcript, to the best of my ability and understanding,
8  from the record of the proceedings in the above-entitled and
9  numbered matter.

10

11

12                              _____

13                              Cathy Pepper, CCR, RPR, CRR
14                              Official Court Reporter
15                              United States District Court