Richard Hernandez
Jonathan Short
John E. Flaherty
McCARTER & ENGLISH, LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102
Telephone No.: 973-622-4444

Mark D. Villanueva
McCARTER & ENGLISH, LLP
1735 Market Street, Suite 700
Mellon Bank Center
Philadelphia, Pennsylvania 19103
Telephone No.: 215-979-3800

*Attorneys for Defendants Mayne Pharma Group
Limited and Mayne Pharma International Pty. Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MYLAN PHARMACEUTICALS, INC.,** | : | **Civ. No.  12-3824** |
| **ROCHESTER DRUG CO-OPERATIVE, INC.,** | : | **CONSOLIDATED** |
| **MEIJER, INC., MEIJER DISTRIBUTION, INC.,** | : | |
| **and AMERICAN SALES COMPANY, LLC,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **WARNER CHILCOTT PUBLIC LIMITED** | : | |
| **COMPANY, WARNER CHILCOTT COMPANY,** | : | |
| **LLC, WARNER CHILCOTT (US), LLC,** | : | |
| **WARNER CHILCOTT LABORATORIES** | : | |
| **IRELAND LTD., MAYNE PHARMA GROUP** | : | |
| **LIMITED, and MAYNE PHARMA** | : | |
| **INTERNATIONAL PTY. LTD.** | : | |
| | : | |
| **Defendants.** | : | |

███████████████████████

████████████████████████████

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANTS MAYNE PHARMA GROUP LIMITED'S AND
## MAYNE PHARMA INTERNATIONAL PTY. LTD.'S
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................... 2

RESPONSIVE STATEMENT OF RELEVANT MATERIAL FACTS ................................... 6

   I.    History of the Doryx® Franchise .............................................................. 6

   II.   Doryx® Licensing Agreement ................................................................. 8

ARGUMENT .................................................................................................. 11

   I.    THE UNDISPUTED FACTS REQUIRE THE APPLICATION OF *COPPERWELD'S* SINGLE ENTITY EXCEPTION TO THE COLLABORATION BETWEEN MAYNE AND WARNER CHILCOTT WITH RESPECT TO DORYX® .................................. 11

        A.  Mayne and Warner Chilcott are Legally Incapable of Conspiring Regarding Doryx® .......................................................................................... 12

        B.  Plaintiffs' Focus on Mayne and Warner Chilcott as Separate Legal Entities Adds Nothing to the *Copperweld* Analysis ...................................... 16

        C.  ████████████████████████████████████████ .................................. 17

   II.   THE UNDISPUTED FACTS ESTABLISH THAT NO ILLEGAL AGREEMENT EXISTS BETWEEN MAYNE AND WARNER CHILCOTT ..................................... 20

   III.  THE UNDISPUTED FACTS REQUIRE THE APPLICATION OF *COPPERWELD'S* SINGLE ENTITY EXCEPTION TO PLAINTIFFS' SECTION 2 CONSPIRACY TO MONOPOLIZE CLAIM ................................................................................ 20

   IV.  PLAINTIFFS' CLAIMS ALSO FAIL FOR THE REASONS STATED IN WARNER CHILCOTT'S MOTION FOR SUMMARY JUDGMENT .......................... 21

CONCLUSION ............................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                            **Page(s)**

*Am. Needle, Inc. v. Nat'l Football League*,
    560 U.S. 183 (2010) ................................................................................*in passim*

*Carpenter Tech. Corp. v. Allegheny Techs., Inc.*,
    646 F. Supp. 2d 726 (E.D. Pa. 2009).................................................................20

*City of Mt. Pleasant v. Assoc. Electric Cooperative*,
    838 F.2d 268 (8th Cir. 1998) ...................................................................*in passim*

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ................................................................................*in passim*

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
    610 F.3d 820 (3d Cir. 2010) ...............................................................11, 12

*Eli Lilly & Co v. Premo Pharm. Labs., Inc.*,
    630 F.2d 120 (3d Cir. 1980) ...............................................................18

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ...............................................................20

*Levi Case Co, Inc. v. ATS Products, Inc.*,
    788 F. Supp. 428 (N.D. Cal. 1992) ........................................................*in passim*

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
    468 U.S. 85 (1984)...............................................................18, 19

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*,
    692 F. Supp. 52 (D.R.I. 1988)............................................................18

*Pecover v. Elec. Arts Inc.*,
    633 F.Supp.2d 976 (N.D. Cal. June 5, 2009)......................................15

*Shionogi Pharma, Inc. v. Mylan, Inc.*,
    No 10-1077, 2011 WL 2174499 (D. Del. May 26, 2011) ........................*in passim*

*Siegel Transfer, Inc. v. Carrier Express, Inc.*,
    54 F.3d 1125 (3d Cir. 1995) ...............................................................11, 12

*Townshend v. Rochwell Int'l Corp*,
    No. C99 0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ......................15

*Wahl v. Rexnord, Inc.*,
    481 F.Supp. 573 (D.N.J. 1979),
    *rev'd on other grounds*, 624 F.2d 1169 (3d Cir. 1980)..............................3, 12, 14

## INTRODUCTION

Defendants Mayne Pharma Group Limited and Mayne Pharma International Pty. Ltd. (collectively "Mayne"), by counsel, respectfully state as follows in further support of their Rule 56 Motion for Summary Judgment as to the Sherman Act Section 1 and 2 conspiracy claims asserted against them in the Complaints filed by Mylan Pharmaceuticals Inc., International Brotherhood of Electrical Workers Local 38, Health and Welfare Fund, Walgreen Co., Safeway Inc., Supervalu Inc., HEB Grocery Co. LP,  Rite Aid Corporation, Rite Aid Headquarters Corp., JCG (PJC), USA, LLC, Maxi Drug, Inc. d/b/a Brooks Pharmacy, Eckerd Corporation, and the International Union of Operating Engineers Local 132 Health and Welfare Fund (collectively, "Plaintiffs").

Mayne joins in asserting all of the arguments made by Defendants Warner Chilcott Laboratories Ireland Limited, Warner Chilcott Public Limited Company, Warner Chilcott Company, LLC, Warner Chilcott (US) LLC, Warner Chilcott Holdings Company III, Ltd. and Warner Chilcott Public Limited Company (collectively "Warner Chilcott") in support of their Motion for Summary Judgment as to the claims asserted against them (as well as against Mayne) in Plaintiffs' Complaints, and in opposition to Plaintiffs' Motions for Summary Judgment. Pursuant to Rule 56, Mayne seeks summary judgment of all claims asserted against it in Plaintiffs' Complaints on the basis of the arguments set forth by Warner Chilcott in its Motion for Summary Judgment.

ME1 17956234v.1

## PRELIMINARY STATEMENT

This Court has only a narrow issue to decide for purposes of Mayne's Motion for Summary Judgment: whether Defendants are legally capable of engaging in a "contract, combination . . . or conspiracy" that violates § 1 of the Sherman Act, 15 U.S.C. § 1, or, in other words, whether Defendants' alleged activity should "be viewed as that of a single enterprise for purposes of § 1." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189 (2010) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)).

Mylan seems confused about their position on that one key issue. On one hand, Mylan has admitted it does not seek to challenge the legitimacy of the exclusive license between Mayne and Warner Chilcott.[1]  On the other, Mylan conjures up a number of hypotheticals and relies upon non-material facts whereby it seeks to establish a static interpretation of Section 1 of the Sherman Act that would subject every conceivable patent licensing arrangement to challenge.[2]

Whatever Mylan's position, they are wrong on the law, which protects the collaboration inherent in the type of exclusive licensing arrangement at issue here.  *See, e.g., Am. Needle, Inc.*, 560 U.S. at 189–90 ("Not every instance of cooperation between two people is a potential "contract, combination . . . or conspiracy, in restraint of trade."); *Shionogi Pharma, Inc. v. Mylan, Inc.*, No 10-1077, 2011 WL 2174499, *5 (D. Del. May 26, 2011) (dismissing Section 1 claim by Mylan, *inter alia*, because patent holder and licensee defendants were a single entity incapable of conspiring with each other under *Copperweld*); *Levi Case Co, Inc. v. ATS Products,*

---

[1]  Plaintiff Mylan Pharmaceuticals Inc.'s Memorandum in Opposition to Warner Chilcott's Motion for Summary Judgment, hereinafter referred to as "Mylan Opp. to WC MSJ," at 45 ("The Doryx license agreement ***is not directly at issue*** except to the extent that it provides the ***backdrop*** against which other activities have occurred.") (emphasis added).

[2]  *See* Plaintiff Mylan Pharmaceuticals Inc.'s Memorandum in Opposition to Mayne's Memorandum in Opposition to Mayne's Motion for Summary Judgment, hereinafter referred to as "Mylan Opp. to Mayne MSJ," at 20-23.

2

*Inc.*, 788 F. Supp. 428 (N.D. Cal. 1992) (patent holder legally incapable of conspiring under the Sherman Act with exclusive patent licensee); *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573 (D.N.J. 1979), *rev'd on other grounds*, 624 F.2d 1169 (3d Cir. 1980) (corporate officer licensor cannot conspire with corporate exclusive licensee where licensor's only economic interest in the patent is through the payments received in the exclusive license).

Mylan's assertion of a rule that "the mere fact that two parties enter into a particular type of agreement—in this case a licensing arrangement that included supply of product and joint development and regulatory conduct—is insufficient to establish the *Copperweld* single entity exception" attempts to craft a narrow, legalistic rule onto a fact-specific analysis.[3]   Indeed, despite its protestations to the contrary, Mylan asks this Court to ignore the general instructions of *Copperweld* "that substance, not form, should determine whether a separately incorporated entity is capable of conspiring under § 1."  *Shionogi Pharma, Inc. v. Mylan, Inc.*, No 10-1077, 2011 WL 2174499, at *5 (citing *Copperweld*, 467 U.S. at 773, n. 21).

A realistic functional analysis of the decade plus of collaboration between Mayne and Warner Chilcott based upon the undisputed facts demonstrates that they shared a common economic interest with respect to the development, marketing, and sale of Doryx® for the United States market.  Mayne and Warner Chilcott did not compete with each other in the sale of branded Doryx® in the United States during the relevant time period.  In fact, it was in each of their respective economic interests to sell as much branded Doryx® as possible in the United States. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[3] Mylan Opp. to Mayne MSJ at 16.

[4]  Defendant Mayne Pharma Group Limited's and Mayne Pharma International Pty. Ltd.'s Memorandum in Support of its Motion for Summary Judgment is hereinafter referred to as "Mayne's Opening Brief."

ME1 17956234v.1

██████████████████████████████████████████████████

██████████  As exclusive partners, Mayne and Warner Chilcott pursued common interests and made joint decisions regarding the manufacture and sale of Doryx® in the United States. ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████  Accordingly, *Copperweld's* single entity exception applies, and Mayne and Warner Chilcott must be granted summary judgment on Plaintiffs' Section 1 Sherman Act claim.

Rather than addressing the undisputed facts of the exclusive licensing relationship between Mayne and Warner Chilcott in its *Copperweld* analysis, Plaintiffs instead focus on an ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████  is legally irrelevant to the *Copperweld* analysis of whether Mayne and Warner were a single entity capable of conspiring to commit the anticompetitive acts alleged by Plaintiffs ████████████████████████

██████████████████████████  ████████████████████

██████████████████████████████████████████████████

██████████ █  ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████

───────────────────

[5]  Mylan Opp. to Mayne MSJ at 6.

4



Plaintiffs' theoretical observation on this point is insufficient to create genuine issue of material fact.

Defendants should be granted summary judgment on Plaintiffs' Section 1 Sherman Act claim for the additional, independent reason that there is no evidence of an illegal agreement between Mayne and Warner Chilcott to engage in any exclusionary act.  As set forth more fully in Warner Chilcott's Motion for Summary Judgment, Plaintiffs have failed to prove any exclusionary conduct at all with respect to Doryx® in the United States.

For all of the same reasons, Plaintiffs have failed to prove a conspiracy to monopolize in violation of Section 2 of the Sherman Act.  Accordingly, Mayne and Warner Chilcott should be granted summary judgment on Plaintiffs' Section 2 Sherman Act conspiracy claim as well.

---

[6] Mylan Opp. to Mayne MSJ at 2.

[7] Mylan Opp. to Mayne MSJ at 6.

ME1 17956234v.1

## RESPONSIVE STATEMENT OF RELEVANT MATERIAL FACTS[8]

### I.     History of the Doryx® Franchise

In 1985, Mayne obtained FDA approval to market Doryx® capsules in the United States with no patent or regulatory exclusivity for the capsules.[9]  Warner Lambert was Mayne's distributor for Doryx® capsules in the United States in the 1990s.[10]  On June 30, 1992, Sidmak Pharmaceuticals (now Pliva) received FDA approval of its ANDA for a generic Doryx® capsule.



In 1995, Mayne, through New Jersey-based

---

[8] Exhibits cited to in this brief were previously submitted with Warner Chilcott's Motion for Summary Judgment as to All Plaintiffs' Claims, and Warner Chilcott's Opposition to Mylan's Motion for Summary Judgment as to Defendants' Antitrust Liability.

[9] *See* Nelson Tr. 180:1–19 (Ex. 341)



[10]  (Ex. 121) (WC0600564 at 67).

[11]  WC3338701  (Ex.  66)       *See* MAYNE-00068395 (Ex. 20)

[12] *See* MA-0227751 (Ex. 429)

ME1 17956234v.1

pharmaceutical manufacturer, Purepac Pharmaceuticals, launched a second generic Doryx® capsule in the United States.[13]  There were then three doxycycline hyclate delayed release capsules on the market in the United States.[14]

In 1996, Warner Lambert exited the generic pharmaceutical business by selling Warner Chilcott to Nale Laboratories[15] ████████████████████████████████████ █

████████████████████████████████████████████████████████

███████ █████████ ██████ ███ ████ ██████ █████ █ ██████ ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[13] *See* WC3338701 ███████████ (Ex. 66).  Mylan's brief confuses the history of the Mayne defendants relative to Purepac Pharmaceutical Co.  A review of the corporate history is required to explain how neither Mayne defendant ever owned a controlling interest in Purepac, contrary to Mylan's assertions.

**Mayne Pharma International Pty. Ltd. ("MPI")**: MPI was a small portion of a much larger company named F.H. Faulding & Co., Ltd.  At one time Faulding owned a controlling interest in Purepac.  However, subsequent to that ownership Faulding was acquired by Mayne Group Ltd (**not a party to this case**).  Faulding was then demerged in November 2005 into two companies: Mayne Pharma Limited (**not a party to this case**) and Symbion Health Limited.  In February 2007, Mayne Pharma Limited was acquired by Hospira Inc., primarily for its injectables business.  In October 2009, Hospira sold the oral pharmaceuticals group of Mayne Pharma Limited – what we know as MPI – to a company named Halcygen Pharmaceuticals Ltd.

**Mayne Pharma Group Limited ("MPG")**: Halcygen was founded on August 18, 2005.  Shortly after acquiring MPI, HalcyGen changed its name to MPG.  MPG is the parent company of MPI.

The details are important.  While Faulding owned a controlling interest in Purepac, the corporate history shows that neither of the Mayne defendants in this case maintained a controlling interest in Purepac.

[14] *See* Nelson Dep. Ex. 27, MA-0368920 (Ex. 8) ████████████████████████ ████████████████████████

[15]  http://www.nytimes.com/1996/03/02/business/company-news-warner-lambert-to-sell-generic-unit-to-nale.html (Ex. 201).

[16] *See* WC0055816 (Ex. 430 ████████████████████████████████ ████████████████████████

██████████████████ ██████████████████████████████████

████████████████████████ █ ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ █ ████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ █ ██████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

## II.    Doryx® Licensing Agreement

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████ the "License Agreement").[22] ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[17] MA-0266524 (Ex 131) ████████████████████████████████

[18] *Id.*

[19] *Id.* ███████████████████████ (Ex. 131); MA-0266526 (Ex. 132) ████████████████████████████

[20] MA-0266524 (Ex. 131) ████████████████████████████ ██████████

[21] *Id.* (Ex. 131) ████████████████████████████████ ████

[22] WC0600564 ██████████████████ (Ex. 121).

ME1 17956234v.1



[23] ███████████████████████████████████████████████████████████

██████████████████████████████[24]████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████[25].

This License Agreement, and the resulting close collaboration between Warner Chilcott and Mayne, had undeniably pro-competitive results. ████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

---

[23] WC0600564 █████████████████████████████████████ (Ex. 121) █████
███████████████████.

[24] WC1648785 ███████████████████████████████████████ (Ex. 202); Deposition of Bill Poll, 172:6-181:21 (Ex. 203).

[25] WC0600564 at 568, paragraph 2(a)(i) and 575, paragraph 10(a) (Ex. 121) █████████
████████████.

[26] Mylan Opp. to WC MSJ at 19.

[27] WC Opp. to Mylan MSJ at 33-34 & Table 2.

[28] WC MSJ at 56.

9

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ Mayne **did not** launch an authorized generic until

2013, after it acquired U.S.-based Metrics, Inc., which develops and manufactures niche generic

pharmaceuticals.[30] ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ ██████████████████████

█████████████████████████████████████████ ███████████████

██████████████████████████████████████████████ ████ ███

███████████████████████████████████████████████████████

██████████████████████████ █

<hr />

[29] *See* WC0600564 (Ex. 121) ██████████████████████████████████
███████

[30] Mayne Pharma 2013 Annual Report at pp. 5, 7, (Ex. 46) available at:
http://www.maynepharma.com/download.cfm?downloadfile=29039C35-24E5-11E3-
9A0D020054554E01&typename=dmFile&fieldname=filename

[31] Deposition of Bill Poll, at 206:15-21 (Ex. 203) ████████████████████████
██████████████████████████████████

[32] MA-0266502 (Ex 133) ████████████████████████████████
███████

[33] WC0600564 at 581, para. 17 (Ex. 121) ██████████████████████████

[34] WC0600564-672 (Ex. 121) ██████████████████████████████████████
██████

## ARGUMENT

### I. THE UNDISPUTED FACTS REQUIRE THE APPLICATION OF *COPPERWELD'S* SINGLE ENTITY EXCEPTION TO THE COLLABORATION BETWEEN MAYNE AND WARNER CHILCOTT WITH RESPECT TO DORYX®

Summary judgment must be granted where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a matter of law. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130 (3d Cir. 1995). On summary judgment, the moving party need not disprove the opposing party's claim. *Id.* When the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has not offered evidence sufficient to establish the existence of an element essential to its case. *Siegel Transfer, Inc.*, 54 F.3d at 1131. In ruling on a motion for summary judgment, a court must assess facts that are material against the proof required of the plaintiff on substantive issues. *Id.*

"To prevail under § 1 of the Sherman Act, Plaintiffs must establish a 'contract, combination . . . or conspiracy.'" *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 834 (3d Cir. 2010) (citing *Am. Needle, Inc.*, 130 S. Ct. at 2208). "The question whether an arrangement is a contract, combination, or conspiracy is different from and antecedent to the question whether it unreasonably restrains trade." *Am. Needle, Inc.*, 130 S. Ct. at 2206.[35] Accordingly, the focus of this motion is not whether Defendants' alleged activity violates § 1 as Mylan argues in its opposition,[36] but whether, as a matter of law, the alleged activity should "be viewed as that of a single enterprise for purposes of § 1." *Copperweld*, 467 U.S. at 771.

---

[35] *See* Mylan Opp. to Mayne MSJ at 14, fn. 71 ("Mylan's MSJ and Mylan's Opposition to Warner Chilcott's MSJ address the issue of whether Defendants did in fact violate § 1; this Opposition deals with Defendants' capability to violate § 1.").

[36] *See, e.g.*, Mylan Opp. to Mayne MSJ at 7–13, 15, 23.

A.    **Mayne and Warner Chilcott are Legally Incapable of Conspiring Regarding Doryx®**

Section 1 applies only to concerted action and does not proscribe independent action by a single entity, *regardless of its purpose and effect on competition*." *Deutscher Tennis Bund*, 610 F.3d at 834 (citing *Am. Needle, Inc.*, 130 S. Ct. at 2208) (emphasis added).

Under *Copperweld*, "[i]n certain cases, distinct legal entities are incapable of concerted action for the purposes of § 1 and must be viewed as a single entity." *Id.* "[C]opperweld did not set clear parameters for what constitutes a single economic entity beyond the parent-subsidiary context." *Id.* "[I]t nonetheless encouraged the courts to analyze the substance, not the form, of economic arrangements." *Id. See, e.g.*, *Deutscher Tennis Bund*, 610 F.3d at 833–35 (dismissing conspiracy claim against "national breed club and registry and several of its regional affiliates" because the collective goal of the entities was "common, not disparate"); *City of Mt. Pleasant v. Assoc. Electric Cooperative*, 838 F.2d 268, 274 (8th Cir. 1998) (under *Copperweld*, finding no concerted action between member entities of a power cooperative); *Siegel Transfer v. Carrier Express*, 54 F.3d 1125 (3d Cir. 1995) (extending *Copperweld* to principal/agent relationship where the entities "were, in substance, one economic unit"); *Levi Case Co, Inc. v. ATS Products, Inc.*, 788 F. Supp. 428 (N.D. Cal. 1992) (patent holder legally incapable of conspiring under the Sherman Act with exclusive patent licensee); *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573 (D.N.J. 1979), *rev'd on other grounds*, 624 F.2d 1169 (3d Cir. 1980) (corporate officer licensor cannot conspire with corporate exclusive licensee where licensor's only economic interest in the patent is through the payments received in the exclusive license); *Shionogi Pharma, Inc. v. Mylan, Inc.*, No 10-1077, 2011 WL 2174499, *5 (D. Del. May 26, 2011) (dismissing Section 1 claim by Mylan, *inter alia*, because patent holder and licensee defendants were a single entity incapable of conspiring with each other under *Copperweld*).

Mylan asserts that these cases were decided "well before *American Needle* and applied formalistic tests that are no longer controlling."[37]   Yet each of these cases relied upon the *Copperweld* rule that "substance, not form" should govern the inquiry of whether two entities can conspire under Section 1 – just as the *American Needle* Court did.  560 U.S. at 195 (citing *Copperweld*).  It is not clear what "test" Mylan now believes is "controlling," as the standard remains what was described in *Copperweld* and applied in *American Needle*.  Further, these cases did not apply "formalistic tests" at all – each involved  a functional analysis of the specific facts (as required by *Copperweld* and reinforced by *American Needle*) to extend *Copperweld* beyond the parent-subsidiary context.

For instance, in *City of Mt. Pleasant*, the court affirmed the District Court's holding that the defendants were part of a single enterprise and therefore could not conspire among themselves on the basis of *Copperweld*.  838 F.2d at 270, 275–76.  The court noted that "[t]he thrust of the holding is that economic reality, not corporate form, should control the decision of whether related entities can conspire."  *Id.* at 275.  Although the plaintiff argued that the defendants each had independent and conflicting economic interests, the court disagreed and articulated that "[e]ven though the cooperatives may quarrel among themselves on how to divide the spoils of their economic power, it cannot reasonably be said that they are *independent sources* of that power.  Their power depends . . . on the cooperation among themselves."  *Id.* at 277.  The court held that "[t]he cooperative organization [was] a single enterprise pursuing a common goal-the provision of low-cost electricity to its rural consumer-members."  *Id.* at 276.  Contrary to Mylan's assertions, the court clearly engaged in a functional analysis to determine whether the defendants were separate economic actors pursuing separate economic interests.

---

[37] Mylan Opp. to Mayne MSJ at 17.

ME1 17956234v.1

In *Wahl*, the court engaged in a similar functional analysis and granted summary judgment to the defendants on the plaintiff's § 1 claim.  The court considered the economic reality of how the defendants – a licensee corporation (Vibra Screw) and licensor executive (Wahl) – actually operated and found that, by virtue of the license agreement, Wahl received a royalty of all devices sold by Vibra Screw.  *Wahl,* 481 F.Supp. at 588.  The court recognized that it was to Wahl's advantage to promote greater sales for Vibra Screw, resulting in increased royalties to Wahl.  The court concluded that Wahl's economic interest was coextensive with that of Vibra Screw's:

> [Wahl] is not acting independently of Vibra Screw for his own personal benefit, rather he stands to gain only through sales made by Vibra Screw. Since Wahl has made Vibra Screw his exclusive licensee, unless Wahl personally exploits his patent apart from his activity as an officer of Vibra Screw, no one else but Vibra Screw can exercise the patent. Wahl is not exploiting the '508 Patent individually. Hence, the only economic interest he has in the patent is derived through Vibra Screw.

*Id*.  Contrary to Mylan's claim, there is nothing formalistic about the court's analysis in *Wahl*.

In *Levi Case*, the court held that the patent holder, Shea, was legally incapable of conspiring with its exclusive patent licensee, ATS, to violate Section 1 of the Sherman Act.  It strains credibility for Mylan to argue that the court in *Levi Case* applied a formalistic test.  The court engaged in a detailed analysis to determine the economic reality of the relationship between Shea and ATS:

> Like the interdependence of the electricity cooperative in *City of Mt. Pleasant*, *the economic reality is that Shea and ATS were not independent sources of economic power. Shea, by virtue of the exclusive license, could not compete in the manufacture of the product covered by the patent.*  Therefore, no agreement between ATS and Shea involving the exploitation of the patent in which they both held an interest can be considered to deprive the marketplace of 'independent sources of economic power previously pursuing separate interests.'  Even if there were no agreements between them at all, there was no opportunity for them to compete.  Thus, they could not 'conspire' in violation of the antitrust laws.

14

788 F. Supp. at 432 (emphasis added).   Accordingly, *Levi Case* is neither formalistic, nor a departure from the holdings of *Copperweld* and *American Needle* as asserted by Mylan.

Mylan is also incorrect in asserting that *Pecover v. Elec. Arts Inc.*, 633 F.Supp.2d 976 (N.D. Cal. June 5, 2009), limited the precedential value of *Levi Case*.   The court in *Pecover* acknowledged that:

> *Levi Case* relied on the Supreme Court's ruling in *Copperweld* . . . that a corporation and its subsidiaries were incapable of conspiring for the purposes of section 1. . . . *Copperweld* reasoned that coordinated activity by parties who lack independent sources of economic power and separate interests does not warrant antitrust scrutiny. . . . *Levi Case* applied that same principle to the relationship between a patent holder and the sublicensee to whom the patent holder had conveyed an exclusive license.

*Id*. at 984.   The *Pecover* court distinguished *Levi Case* because, unlike the instant case, the complaint alleged "multiple exclusive agreements to choke off competition in a way that is not legally sanctioned, unlike the exclusive agreement involving a single patent."   *Id*.

Mylan's reliance on *Townshend v. Rochwell Int'l Corp*, No. C99 0400SBA, 2000 WL 433505, at *6 (N.D. Cal. Mar. 28, 2000), is likewise misplaced.   This unpublished trial court opinion is clearly distinguishable in that it attempts to limit *Copperweld* to a parent/subsidiary context, in direct conflict with the substantial weight of precedential authority in this Circuit (and indeed, in the Ninth Circuit).

Finally, in *Shionogi*, the trial court examined the function of the licensing agreement before it—as required by *American Needle*, which was decided a year before *Shionogi*—and dismissed Mylan's Section 1 claim because, among other reasons, Shionogi and CIMA, an exclusive licensee and a patent holder, were incapable of conspiring with each other.   The court explained that "the broader principle [is] that substance, not form, should determine whether a separately incorporate entity is capable of conspiring under § 1."   2011 WL 2174499, at *5

(citing *Copperweld*, 467 U.S. at 773, n. 21).  In its analysis of the relationship between Shionogi and CIMA, the court cited to both *Copperweld* and *Levi Case* for the proposition that a patent holder and exclusive licensee are incapable of conspiring as a matter of law.  *See id*.

**B.     Plaintiffs' Focus on Mayne and Warner Chilcott as Separate Legal Entities Adds Nothing to the *Copperweld* Analysis**

Mylan's emphasis on the fact that Defendants are separate entities misses the point.[38] Whether two separate legal entities can conspire depends on whether they "'pursue[] the common interests of the whole rather than interests separate from those of the [group] itself. . . . Because [such] coordination . . . does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests, it is not activity that warrants § 1 scrutiny.'" *City of Mt. Pleasant*, 838 F.2d at 274–75 (citing *Copperweld*, 467 U.S. at 770-71). "This inquiry is sometimes described as asking whether the alleged conspirators are a single entity. That is perhaps a misdescription, however, because the question is not whether the defendant is a legally single entity or has a single name; nor is the question whether the parties involved 'seem' like one firm or multiple firms in any metaphysical sense. The key is whether the alleged 'contract, combination . . . or conspiracy' is concerted action . . ." *Am. Needle, Inc.*, 560 U.S. at 195.

Courts have long held that "concerted action under *§ 1* does not turn simply on whether the parties involved are legally distinct entities. Instead, courts have eschewed such formalistic distinctions in favor of a functional consideration of how the parties involved in the alleged

---

[38] *See, e.g.*, Mylan Opp. to Mayne MSJ at 1, 15, 16, 19.

ME1 17956234v.1

anticompetitive conduct actually operate." *Am. Needle, Inc.*, 560 U.S. at 191.  Because the application of *Copperweld* is based on the commercial realities of how the parties operate, it is not determinative that two parties to an alleged § 1 violation are legally distinct entities.  Nor is it determinative for *Copperweld* purposes that two legally distinct entities have organized themselves under a single umbrella or into a structured joint venture.  *See Am. Needle, Inc.*, 560 U.S. at 196.

**C.**



_____

[39] Mayne's Opening Brief at 29–34.

[40] Deposition of Bill Poll, at 206:15-21 (Ex. 203) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see also*, Mylan Opp. to Mayne MSJ at 6 ▓▓▓▓▓

[41] MA-0266502 (Ex 133) ▓▓▓▓▓▓▓▓▓▓▓▓▓

ME1 17956234v.1



*See Eli Lilly & Co v. Premo Pharm. Labs., Inc.*, 630 F.2d 120, 137 & n.78 (3d Cir. 1980) ("[T]he development and perfection of new drugs frequently requires the devotion of years of research time and the expenditure of millions of dollars. . . . [T]his type of an investment of human and capital resources is . . . socially ***beneficial*** . . . .") (emphasis added); *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 103 (1984) ("[A] joint selling arrangement may be so efficient that it will increase sellers' aggregate output and thus be procompetitive") (citation omitted).[43]

---

[42] WC0600564 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 121) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

[43] *See also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 692 F. Supp. 52, 70 (D.R.I. 1988) ("Examples of the effect of competition on the merits are non-exploitative pricing, ***higher output, improved product quality***, energetic market penetration, ***successful research and development***, and cost-reducing innovations.") (emphasis added)

[44] Mylan Opp. to Mayne MSJ at 21.

18



Moreover, any arguments about "disparate economic interests" fall flat in the face of the law.  In *City of Mt. Pleasant*, the court rejected the plaintiff's argument that the defendants each had independent and conflicting economic interests because "[e]ven though the cooperatives may quarrel among themselves on how to divide the spoils of their economic power, it cannot reasonably be said that they are *independent sources* of that power.  Their power depends . . . on the cooperation among themselves."  *Id.* at 277.  █████████████████████████████

██████████████████████████████████████████████████████████████████

███████████ █████████████████████████████████████████████████████

---

[45]  Mylan Opp. to Mayne MSJ at 22.

[46]  WC0600564, ████████████████████████████ (Ex. 121).

[47]  WC1648785 ██████████████████████████████████████████████ (Ex. 202); Deposition of Bill Poll, 172:6-181:21 (Ex. 203).

[48]  WC0600564, ████████████████████████████████ (Ex. 121).

[49]  Mylan Opp. to Mayne MSJ at 6.

ME1 17956234v.1

of economic power with respect to the sale of Doryx® in the United States for the purposes of *Copperweld* analysis.  It is not credible for Mylan to argue that Mayne or Warner Chilcott had any independent decision making authority regarding the exploitation of the patent, or that any concerted activity the two defendants might take with regard to the patent would coalesce economic power previously directed at disparate goals.  As in *City of Mt. Pleasant* and *Levi Case*, among others, the economic reality is that Mayne and Warner Chilcott were not independent sources of economic power with respect to the sale of Doryx® in the United States.

**II.    THE UNDISPUTED FACTS ESTABLISH THAT NO ILLEGAL AGREEMENT EXISTS BETWEEN MAYNE AND WARNER CHILCOTT**

In addition to failing to prove concerted action, Plaintiffs' Sherman Act Section 1 claim fails for the additional, independent reason that there is no evidence of an agreement between Mayne and Warner Chilcott to engage in any "illegal" exclusionary acts.  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010) (requiring "illegal" concerted action for a finding of Sherman Act liability).  As set forth more fully in Warner Chilcott's Motion for Summary Judgment, none of the acts Plaintiffs' allege with respect to Doryx in the United States are exclusionary acts that are illegal under Section 1 of the Sherman Act.

**III.    THE    UNDISPUTED    FACTS    REQUIRE    THE    APPLICATION    OF *COPPERWELD'S* SINGLE ENTITY EXCEPTION TO PLAINTIFFS' SECTION 2 CONSPIRACY TO MONOPOLIZE CLAIM**

████████████████████████████████████

████████████████████████████████████

████████████████████████  They are a single entity incapable of conspiring under Section 2 of the Sherman Act for the same reasons set forth in connection with Plaintiffs' Section 1 claim.  *See Carpenter Tech. Corp. v. Allegheny Techs., Inc.*, 646 F. Supp. 2d 726, 734 (E.D. Pa. 2009) (holding *Copperweld* doctrine "equally applicable to

ME1 17956234v.1

Section 2 conspiracy to monopolize claims" and dismissing claim on *Copperweld* grounds).

## IV.   PLAINTIFFS' CLAIMS ALSO FAIL FOR THE REASONS STATED IN WARNER CHILCOTT'S MOTION FOR SUMMARY JUDGMENT

Mayne joins in asserting all of the arguments made by Warner Chilcott in support of their Motion for Summary Judgment, and its oppositions to Plaintiffs' Motions for Summary Judgment.

## **CONCLUSION**

For the reasons set forth herein, Mayne and Warner Chilcott respectfully request that the Court grant this Motion for Summary Judgment as to the Sherman Act Section 1 and 2 conspiracy claims asserted against them by Plaintiffs.

Dated: May 23, 2014                    By: _____

Richard Hernandez
Jonathan Short
John E. Flaherty
MCCARTER & ENGLISH, LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102
Telephone No.: 973-622-4444
rhernandez@mccarter.com
jshort@mccarter.com
jflaherty@mccarter.com

Mark D. Villanueva
MCCARTER & ENGLISH LLP
1735 Market Street, Suite 700
Mellon Bank Center
Philadelphia, Pennsylvania 19103
Telephone No.: 215-979-3800
mvillanueva@mccarter.com

*Attorneys for Defendants Mayne Pharma Group Limited and Mayne Pharma International Pty. Ltd.*

21

ME1 17956234v.1

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS MAYNE PHARMA GROUP LIMITED'S AND MAYNE PHARMA INTERNATIONAL PTY. LTD'S MOTION FOR SUMMARY JUDGMENT and supporting documents were caused to be served on this 23rd day of May, 2014 by electronic mail upon counsel of record.

Richard Hernandez

ME1 17956234v.1