**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MYLAN PHARMACEUTICALS, INC., | : | |
| ROCHESTER DRUG CO-OPERATIVE, | : | |
| INC., MEIJER, INC., MEIJER | : | |
| DISTRIBUTION, INC., AMERICAN | : | |
| SALES COMPANY, LLC, WALGREEN | : | |
| CO., SAFEWAY INC., SUPERVALU | : | |
| INC., and HEB GROCERY CO. LP, et al., | : | |
| | : | Civ. No. 12-3824 |
| Plaintiffs, | : | CONSOLIDATED |
| | : | |
| v. | : | INDIRECT PURCHASER ACTION |
| | : | |
| WARNER CHILCOTT PUBLIC | : | |
| LIMITED COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT WARNER CHILCOTT'S OPPOSITION TO INDIRECT PURCHASER**
**PLAINTIFF LABORERS HEALTH AND WELFARE TRUST FUND FOR**
**NORTHERN CALIFORNIA'S MOTION FOR CLASS CERTIFICATION**


**PUBLIC REDACTED VERSION**

## <u>TABLE OF CONTENTS</u>

I.    LABORERS TRUST'S SPECULATION FAILS TO ESTABLISH NUMEROSITY UNDER RULE 23(a)(1) ................................................. 2

    A.    Laborers Trust Fails to Provide a Method to Reliably Specify the Number of Actual Class Members under Rule 23(a)(1) ................................. 2

          1.    Dr. Rausser's "Probabilistic" Class Membership and Speculation Cannot Specify the Number of Class Members for Rule 23(a)(1) ............. 3

          2.    Laborers Trust's Class Definition Fails to Remove Unharmed Third-Party Payers and Unharmed Consumers ................................. 5

    B.    Laborers Trust Ignores and Cannot Satisfy Rule 23's Ascertainability Requirement ............................................................. 6

II.    ANY COMMON ISSUES EXISTING UNDER RULE 23(a)(2) ARE OVERWHELMED BY INDIVIDUAL ISSUES .......................................... 9

III.    LABORERS TRUST FAILS TO ESTABLISH TYPICALITY UNDER RULE 23(a)(3) ................................................................ 10

IV.    LABORERS TRUST FAILS TO ESTABLISH ADEQUACY UNDER RULE 23(a)(4) ................................................................ 10

V.    LABORERS TRUST FAILS TO SATISFY RULE 23(b)(3) .......................... 11

    A.    Individual Issues Predominate over Common Questions ..................... 11

          1.    Laborers Trust's Damages Theory Does Not Match Its Liability Theory, and Plaintiff Fails to Establish Predominance under Rule 23(b)(3) ........................................................ 12

          2.    Individual Issues Predominate with Respect to Impact ............ 12

          3.    Individual Issues Predominate with Respect to Damages ........ 16

    B.    Class Treatment Is Not the Superior Method of Adjudication ............. 16

VI.    LABORERS TRUST'S PROPOSED INJUNCTIVE RELIEF CLASS FAILS TO SATISFY RULE 23(b)(2) ................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)................................................................................6

*Comcast. Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).................................................................................1, 12

*Davis v. Kraft Foods N. Am.*,
   2006 WL 237512 (E.D. Pa. Jan. 31, 2006) ...............................................10

*Dewey v. Volkswagen*,
   681 F.3d 170 (3d Cir. 2012)........................................................................11

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)........................................................................11

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2014 WL 1623705 (E.D. Tenn. Apr. 23, 2014).........................................9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2014 WL 340903 (E.D. Tenn. Jan. 30, 2014)..............................1, 8, 9, 10

### MISCELLANEOUS

Fed. R. Civ. P. 23................................................................................... passim

Laborers Trust's (California indirect purchaser plaintiff)[1] motion for class certification is a virtual mirror image of the amended class certification motion filed by the Florida, Nevada, and West Virginia Indirect Purchaser Plaintiffs (collectively "IPPs") and fails to satisfy Rule 23 for the same reasons.

Laborers Trust's numerosity (Rule 23(a)(1)) showing is nothing more than the very speculation that this Court rejected in its November 20, 2013 Order (Dkt. 434) denying the IPPs' initial class certification motion.  The ascertainability deficiencies are even more striking.  Laborers Trust relies on the same theory and expert recently rejected in *In re Skelaxin*, 2014 WL 340903 (E.D. Tenn. Jan. 30, 2014), a case in which Laborers Trust was a putative class representative.  *Id.* at *14 ("The problem of identifying which entities are 'end payors' . . . still involves individualized fact-finding.").  Moreover, Laborers Trust does not even attempt to provide the Court with the required objective criteria for determining whether putative class members are in the proposed classes, using a novel, improper "probabilistic" class membership methodology.  Nor has Laborers Trust satisfied its typicality (Rule 23(a)(3)) or adequacy (Rule 23(a)(4)) burdens.  Laborers Trust asks this Court to certify a class that is rife with conflicts— within the same proposed damages class, third party payers will be fighting among themselves and with consumers for the same dollar of recovery.

Predominance and superiority (Rule 23(b)(3)) likewise are absent.  Laborers Trust relies on a single expert—Dr. Rausser—to carry its burden of proof on the predominance of common issues with respect to antitrust impact and damages.  But Dr. Rausser's work does not match Laborers Trust's theory of liability, as required by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426

---

[1] Defendants have moved to dismiss Laborers Health and Welfare Trust Fund for Northern California's ("Laborers Trust") Amended Complaint and that motion is pending.  (Dkt. 637).  Discovery of Laborers Trust and the West Virginia IPP remains ongoing.  Defendants respectfully reserve the right to raise future arguments in opposition to Laborers Trust's proposed class based on discovery Defendants have not yet had the opportunity to obtain.

(2013).  Dr. Rausser's approach to impact and damages ignores key facts showing not only that many putative class members were not injured at all, but also that detailed, individualized inquiries would be required to separate impacted from non-impacted class members. Individualized issues fatally undercut Laborers Trust's damages and superiority arguments.

Because Laborers Trust relies heavily on the IPPs' amended motion for class certification, to avoid duplication we incorporate by reference Warner Chilcott's February 21, 2014 Amended Opposition to Indirect Purchaser Plaintiffs' Amended Motion for Class Certification ("WC IPP Opp.") (Dkt. No. 485).  We focus below on the additional evidence developed through discovery since the filing of that opposition and on issues specific to Laborers Trust.

## I.   LABORERS TRUST'S SPECULATION FAILS TO ESTABLISH NUMEROSITY UNDER RULE 23(a)(1)

### A.   Laborers Trust Fails to Provide a Method to Reliably Specify the Number of Actual Class Members under Rule 23(a)(1)

Laborers Trust proposes an indirect purchaser damages class for California consisting of: (1) "numerous types of third party payors" (i.e. "health benefit plans, health insurers, nursing homes and other healthcare providers, and self-insured employers") that reimbursed for Doryx prescriptions and (2) consumers who purportedly purchased Doryx.  Mem. Of Law in Support of Pl. Laborers Health and Welfare Trust Fund for N. Cal.'s Mot. For Class Certification ("Mot.") at 2 & n.4.  Laborers Trust must show that its proposed California damages class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); Nov. 20, 2013 Order at 3 (setting forth standard for proving numerosity).  But Laborers Trust's motion, like the IPPs' Amended Motion, does "not specify or even forecast the number of Class Members." Nov. 20, 2013 Order at 5 (Dkt. 434).

### 1.    Dr. Rausser's "Probabilistic" Class Membership and Speculation Cannot Specify the Number of Class Members for Rule 23(a)(1)

Dr. Rausser applied to California the same class membership theory used for the IPPs and separately estimates the numbers of (1) putative third party payer class members and (2) putative consumer class members.  Rausser Second Supp. Decl. ¶ 5 (followed "exactly the same method as [he] used to estimate the number of Class members in the other four Indirect Purchaser Classes.").[2]  Each analysis fails to satisfy Rule 23(a)(1).

**Third Party Payers.**  Dr. Rausser's assessment for California continues to reject the use of real-world reimbursement data in favor of calculating the "probability" that a third party payer would have reimbursed for a Doryx prescription.  *See* WC IPP Opp. at 2–4.  Dr. Rausser's "methodology provides no information on whether any of the TPPs in California (or Florida, Nevada, and West Virginia) *actually reimbursed even one Doryx prescription*." Cremieux Supp. Decl. ¶ 19 (emphasis added); *see* WC IPP Opp. at 2–4.

Dr. Rausser's "probabilistic" results for California underscore the hypothetical nature of his analysis.  For example, as shown on Table A below, Dr. Rausser projects that One Workplace L. Ferrari Flexible Benefits Plan has a 19.9% *chance* of having reimbursed for a Doryx prescription meaning the plan has only a 19.9% *chance* of being in the class.  Cremieux Second Supp. Decl. (Ex. 1) at ¶ 12 & Table A.[3]  Similarly, Vista Health & Welfare Benefit Plan has a 19.6% *chance* of having reimbursed for a Doryx prescription and of being a class member.  Cremieux Second Supp. Decl. (Ex. 1) at 6, Table A.  In fact, for each of the 15 plans on Table A, "there is less than a 20 percent chance of having reimbursed *even a single one* of their members

---

[2] Dr. Rausser's class certification opinions fail to meet minimum standards of relevance and reliability under the Federal Rules of Evidence and should be excluded.  *See* Warner Chilcott's Mem. in Support of Mot. to Exclude Rausser, Feb. 4, 2014 (Dkt. 478); Def.'s Reply Mem. in Support of Mot. to Exclude Rausser, Mar. 7, 2014 (Dkt. 492).

[3] ████████████████████████████████████████████████████████████████

for Doryx." *Id.* at ¶ 12 (emphasis added).  But, according to Dr. Rausser, these 15 plans add up

to 3 potential class members, a conclusion that "does not make sense." *Id.* at ¶ 12.

| | | | Contribution to the Total Number of Self-Insured Plans Paying for Doryx |
|---|---|---|---|
| **Table A:** Examples of Employer Self-Insured Plans Paying for Doryx in California Based on Dr. Rausser's Methodology | | | |
| No. | Employer Id. No. | Plan Name | |
| 1 | 770516002 | ONE WORKPLACE L. FERRARI FLEXIBLE BENEFITS PLAN | 0.199 |
| 2 | 770138549 | HAMCOR, INC. HEALTH AND WELFARE PLAN | 0.199 |
| 3 | 237221695 | COMMUNITY HEALTH CLINIC OLE WELFARE BENEFITS PLAN | 0.199 |
| 4 | 954666411 | VISTAGE INTERNATIONAL, INC. FLEXIBLE BENEFITS PLAN | 0.198 |
| 5 | 943209029 | WOODMONT REAL ESTATE SERVICES HEALTH & WELFARE PLAN | 0.198 |
| 6 | 680083197 | TED STEVENS, INC. WELFARE PLAN | 0.197 |
| 7 | 262177519 | FIELDSTONE MANAGEMENT SERVICES, INC MEDICAL, DENTAL AND LIFE INSURANCE PLAN | 0.197 |
| 8 | 330307529 | KNIGHT & CARVER YACHTCENTER, INC. WELFARE BENEFITS PLAN | 0.197 |
| 9 | 953155469 | SIGNET ARMORLITE, INC. GROUP LIFE & HEALTH INSURANCE PLAN | 0.197 |
| 10 | 261565558 | MILLENNIUM LABORATORIES, INC. WELFARE BENEFIT PLAN | 0.197 |
| 11 | 850471900 | INLAND KENWORTH WELFARE BENEFITS PLAN | 0.197 |
| 12 | 950925915 | LAWRYS RESTAURANTS INC. GROUP MEDICAL PLAN | 0.197 |
| 13 | 030337413 | INFOTRUST GROUP, INC. WELFARE BENEFITS PLAN | 0.196 |
| 14 | 952794408 | MISSION INTERNAL MEDICAL GROUP, INC. WELFARE BENEFITS PLAN | 0.196 |
| 15 | 952871788 | VISTA HEALTH & WELFARE BENEFIT PLAN | 0.196 |
| | | Total | 2.960 |

Dr. Rausser's calculations also yield multiple false positives.  Dr. Rausser concluded that

some plans were virtually certain to be class members because he estimated that they had a

99.9% chance of having reimbursed at least one Doryx prescription during the proposed class

period.  Cremieux Second Supp. Decl. (Ex. 1) ¶ 15 & Table B.  ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

In sum, **all** of Dr. Rausser's estimates of third-party payer class membership are "probabilistic." Such speculation has been rejected by this Court and cannot satisfy Plaintiffs' burden to establish numerosity. *See* WC IPP Opp. at 3 (citing cases).

**Consumers**. Dr. Rausser continues to focus on ███████████████ and inapposite averages that fail to show actual Doryx purchases by California consumers that were injured by the alleged overpayment within the class period. Cremieux Second Supp. Decl. (Ex. 1) ¶ 36. This approach provides the Court with nothing but speculation regarding the number of potential consumer class members. *See* WC IPP Opp. at 4.

2.     **Laborers Trust's Class Definition Fails to Remove Unharmed Third-Party Payers and Unharmed Consumers**

The proposed definition of the California damages class is identical to the proposed definitions for the Florida, Nevada, and West Virginia damages classes, except for the substitution of the relevant state in each respective definition. Like the other three proposed damages classes, the California class does not exclude substantial numbers of third party payers and consumers that suffered no damages and should not be considered part of the class. WC IPP Opp. at 4–6.

Specifically, Dr. Rausser applies an economically flawed approach to address the effect of Warner Chilcott's generous consumer coupons—which reduced prices so much that there was no injury for many consumers in Dr. Rausser's hypothetical but-for world. WC IPP Opp. at 5; Cremieux Second Supp. Decl. (Ex. 1) ¶ 36; Cremieux Supp. Decl. ¶¶ 11–12. Dr. Rausser focuses on each individual coupon transaction, instead of focusing on actual consumers and comparing the overall costs to each consumer in the actual and but-for worlds. Dr. Rausser's

████████████████ approach fails to remove consumers who purchased Doryx with a coupon on one occasion but not another, but who were not harmed overall, and may even have *negative damages*, because they were better off in the actual world.  Cremieux Second Supp. Decl. ¶ 37.  Leaving these unharmed consumers in the class overstates class membership.  *See* WC IPP Opp. at 5–6.

Several other large categories of putative class members improperly remain in the class, even though they would have been unharmed, including (1) third party payers with only brand loyal members, or the brand loyal consumers themselves, who would buy Doryx regardless of generic entry, (2) third party payers that passed on any alleged overpayment through premiums, and (3) consumers who had reached their deductible limits and who thus paid nothing for ensuing prescriptions.  *See* WC IPP Opp. at 6; Cremieux Second Supp. Decl. (Ex. 1) ¶ 35 & n.36.

Numerosity cannot be evaluated without excluding these unharmed putative class members.

### B.  Laborers Trust Ignores and Cannot Satisfy Rule 23's Ascertainability Requirement

Rule 23 requires that class members be ascertainable.  *See* WC IPP Opp. at 6–7 (discussing Third Circuit cases).  But Laborers Trust fails to identify *any* criteria by which this Court can determine membership in the proposed classes without individualized analysis.  *See* Section I.A. (Laborers Trusts' "probabilistic" class method).  Laborers Trust's effort to follow the IPPs and relegate the "essential prerequisite" of ascertainability to the claims administration stage contradicts the Third Circuit's mandate that plaintiffs show "at the outset" that their proposed class members are objectively ascertainable.  *See, e.g., Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); WC IPP Opp. at 6–7 (discussing cases).

In fact, Laborers Trust's own contracts with its pharmacy benefit manager ("PBM") OptumRx show why the proposed class is not ascertainable without an individualized analysis.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ ██ ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Cremieux

Second Supp. Decl. (Ex. 1) ¶ 26; *see also* Mot. at 2 (defining class as "[a]ll persons or entities . . . who reimbursed for, or indirectly purchased, other than for resale, branded Doryx in the state of California"); Rausser Class Cert. Dep. Tr. 250:11–17, May 3, 2013 (Ex. 4) (proposed class

---

[4] ████████████████████████████████████████████████

[5] "AWP" or "average wholesale price" referred to in this context is a published list price that is higher than what pharmacies actually pay to purchase pharmaceuticals.

[6] ██████████████████████████████████████████████████

includes any entity with "***responsibility for actual payment*** with regard to any transactions that take place with regard to the actual world versus the but-for world").

The OptumRx contracts are not isolated agreements. Data from 2012 show that nearly 40% of small employer plans include guaranteed rebate payments in pharmacy benefit manager contracts. For larger employers, the number was even greater, as 59% included rebate guarantees from a pharmacy benefit manager in 2012. █████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████[8] These PBM risk sharing contracts are just one example of the complex web of risk sharing agreements that would require individualized analysis to determine whether in any particular instance an insurer, employer, pharmacy benefit manager or other intermediary in the reimbursement system qualifies as a class member. WC IPP Opp. at 7–8.

Laborers Trust claims that identifying the third party payer members of the class is "straightforward" because class members are defined by objective criteria: "they must have paid a portion of the final purchase price for branded Doryx without being fully reimbursed for that payment." Reply Mem. in Support of IPPs' Am. Mot for Class Certification ("IPP Reply") at 8 (Dkt. 630). But *Skelaxin* rejected this exact argument, finding that "what it means to 'pay or reimburse' some or all of the purchase price is unclear and requires consideration of the individual contractual relationships underlying each transaction." 2014 WL 340903 at *12.

In both *Skelaxin* and this case, Dr. Rausser's theory of class membership is that (1) the inquiry is "transaction driven;" (2) the overcharge may be shared "between a PBM and a health

---

[7] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

2013 CVS Caremark Corp. 10-K, at 3 (Ex. 5) ("CVS Caremark Corporation . . . is the largest integrated pharmacy health care provider in the United States").

and welfare fund 'depend[ing] on the contractual relationship;'" (3) to determine "price risk" requires one "to consider the circumstances of the individual contractual relationship;" and (4) "only those PBMs that had the price risk are members of the end payor class." *Id.* at *12.[9]

The *Skelaxin* court's conclusion—that the proposed class was not ascertainable because Dr. Rausser's theory "would require analyzing each contract or agreement and deciding which entity or individual is the class member for that transaction"—applies here as well. *Skelaxin*, 2014 WL 340903 at *13 (emphasis omitted); *see also id.* at *16 ("The question of who paid or reimbursed a portion of the purchase price for Skelaxin is—according to [Dr. Rausser]—a question with no simple resolution" that would "require a transaction-by-transaction inquiry" to determine class membership.).[10]

With no method for determining how, when, by whom, or under what criteria class members will be identified, Laborers Trust damages class is not ascertainable. These issues cannot be deferred to claims administration. *See Skelaxin*, 2014 WL 340903 at *13–15 (rejecting Laborers Trust's and Dr. Rausser's efforts to defer ascertainability to claims administration).

## II.   ANY COMMON ISSUES EXISTING UNDER RULE 23(a)(2) ARE OVERWHELMED BY INDIVIDUAL ISSUES

Plaintiffs' claims in theory may raise certain common issues, but the many individual issues concerning liability and damages here predominate over any common issues and make class certification inappropriate, as described below in Section V.A.

---



In April, the *Skelaxin* court denied plaintiffs motion for reconsideration, noting that Dr. Rausser "conceded that, in order to determine price risk, consideration of the circumstances of the individual contractual relationships in each transaction would be required." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 1623705, at *1–2 (E.D. Tenn. Apr. 23, 2014).

### III.  LABORERS TRUST FAILS TO ESTABLISH TYPICALITY UNDER RULE 23(a)(3)

Like the IPPs, Laborers Trust—a union health and welfare trust fund—is not "typical" of the broad spectrum of putative "indirect purchaser" class members.  *See* WC IPP Op. at 8–10.  The proposed California class includes not only union health plans, but also nationwide insurers, nursing homes, employer plans, individual insured consumers, and individual uninsured consumers.  *See* Mot. at 2 & n.2.  Laborers Trust is a larger and more sophisticated entity than individual consumer class members.  But Laborers Trust's membership pales in comparison to mega-insurers such as Kaiser Permanente and Blue Cross-Blue Shield, which cover over eight million patients in California, and many more nationwide.[11]

The only proposed class representative in this case is a union health plan; all other types of class members (*e.g.*, nursing homes, employer plans) have no representation of any kind.  There is no proposed ***consumer*** class representative.  The wide and diverse range of putative class members cannot be considered "similarly situated" with the Laborers Trust.  *See, e.g.*, *Davis v. Kraft Foods N. Am.*, 2006 WL 237512 (E.D. Pa. Jan. 31, 2006) (denying certification for lack of typicality); WC IPP Op. at 9.  Similarly, the individualized inquiries required to determine class membership show that "typicality" may be lacking in this case.  *Skelaxin*, 2014 WL 340903 at *20; *see* Section I.B above (discussing lack of ascertainability).

### IV.  LABORERS TRUST FAILS TO ESTABLISH ADEQUACY UNDER RULE 23(a)(4)

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[T]he adequacy inquiry under Rule 23(a)(4)

---

[11] *See* Kaiser Permanente, Fast Facts, Mar. 31, 2014 (Ex. 8) (Kaiser Permanente has 3,527,274 members in Northern California and 3,719,193 members in Southern California); Blue Shield of California, Fast Facts, March 2013 (Ex. 9) (2,953,200 members in California).  Laborers Trust had less than 55,000 members at the end of 2012.  2012 Laborers Trust Funds Summary Annual Report, at 3 (Ex. 7).

serves to uncover conflicts of interest between named parties and the class they seek to represent." *Dewey v. Volkswagen*, 681 F.3d 170, 182 (3d Cir. 2012); *see* WC IPP Opp. at 10.

The divergent, antagonistic interests between and among the class representatives and putative class members in the IPP damages classes apply here as well: (1) the damages theory is a "zero-sum" game that creates conflicting claims to the same dollar of recovery; (2) risk sharing agreements create conflicts between plan sponsors, like Laborers Trust, and PBMs, who may be class members and may dispute which party – the plan sponsor or the PBM—was "at risk" for all or a portion of a reimbursement payment; (3) the high rate of pass on of any alleged overcharge by plan sponsors to consumers through premiums creates conflicts between consumers and plan sponsors; and (4) brand loyal consumers actually benefit from the alleged delay in generic entry and thus would have been worse off in Laborers Trust's but-for world of earlier generic entry. *See* WC IPP Opp. at 10–12. Laborers Trust cannot demonstrate adequacy under Rule 23(a)(4) in light of these conflicts

## V.    LABORERS TRUST FAILS TO SATISFY RULE 23(b)(3)

Rule 23(b)(3) permits class certification only if "the court finds that the questions of law or fact common to class members ***predominate*** over any questions affecting only individual members, and that a class action is ***superior*** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Laborers Trust fails to make the required showing of predominance and superiority.

### A.    Individual Issues Predominate over Common Questions

The predominance test is "a standard far more demanding than the commonality requirement." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310–11 (3d Cir. 2008). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (citation omitted).

11

1.   **Laborers Trust's Damages Theory Does Not Match Its Liability Theory, and Plaintiff Fails to Establish Predominance under Rule 23(b)(3)**

Laborers Trust follows the IPPs and relies solely on Dr. Rausser to meet its burden of showing predominance under Rule 23(b)(3).   But Dr. Rausser's damages model is flatly inconsistent with Laborer Trust's "product hopping" theory of liability, which only seeks to label a new product introduction "anticompetitive" when it is coupled with the ***withdrawal*** of the older product.   *See* WC IPP Opp. at 14–15.   Under that theory, only one "switch" could possibly be at issue, the 2005 switch to new Doryx tablets from older Doryx tablets.   *Id*. at 15–16.

Dr. Rausser ignored Laborer Trust's liability theory and determined impact and damage based on all product "switches," including those where Warner Chilcott ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████   Dr. Rausser thus "identifies damages that are not the result of the wrong," in violation of *Comcast*.   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1434 (2013); *see id.* at 1433 (to satisfy Rule 23(b)(3) predominance requirement, "any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.") (internal quotation marks omitted); WC IPP Opp. at 13–14 (discussing Dr. Rausser's failure to meet requirements of *Comcast*).

2.   **Individual Issues Predominate with Respect to Impact**

Warner Chilcott's opposition to IPPs amended class certification motion identified eight key facts, many of which affect both the price paid by putative class members as well as the difficulty of determining these prices, that affect the impact evaluation.   Despite previously conceding that these facts must be evaluated at the class certification phase in a pharmaceutical industry litigation (Rausser Nexium Decl. ¶ 14), Dr. Rausser ignored each of these factors.   Dr.

Cremieux's previous estimation that tens of thousands of proposed class members would have suffered no harm applies here as well to show the predominance of individualized issues in the impact analysis.  WC IPP Opp. at 17.

### a.    Coupons and Samples Made Brand Cheaper than Generic

Substantial numbers of consumers were better off in the real world than they would have been in Dr. Rausser's hypothetical but-for world because of Warner Chilcott's generous consumer programs, which offered consumers ████████████████████████████ ██████████████████████████████████  *See* WC IPP. Opp. at 17–18. Coupons and free samples each directly lowered consumers' out of pocket cost for Doryx therapy.  *Id*. at 18.   Dr. Cremieux showed that these reductions made tens of thousands of proposed class members better off in the real world than they would have been in Dr. Rausser's hypothetical "but-for" world with earlier generic entry.   *Id*.   But Dr. Rausser proposed no alternative—other than an individualized inquiry—for identifying these potentially unharmed individuals, some of whom had ***negative damages***, that still remain in the putative class.   *Id.*; Cremieux Second Supp. Decl. (Ex. 1) ¶ 37.

### b.    Varying Deductibles, Co-Pays, and Coverage Caps

Many of the factors that determine the amount a consumer pays for a prescription drug vary over time.   These factors include the amount of a consumer's co-pay, the amount of a consumer's insurance deductible, whether any limit has been reached beyond which the insurance plan, and not the consumer, pays for a prescription, and whether the consumer had any gaps in time when she was not covered by insurance for prescription drugs.  WC IPP Op. at 19-20.   Individualized inquiries would be required to evaluate the effect of these health plan features, making class certification inappropriate.   *Id.*

### c. Consumers Are Heterogeneous, and Many Are Brand Loyal, Preferring Branded Drugs

Dr. Rausser ignores the substantial number of brand loyal Doryx users who would not be impacted by any alleged "delay" in generic entry, and in fact would be worse off, if as here brand prices increased after generic entry. WC IPP Op. at 20–21. Dr. Cremieux previously showed that the number of brand-loyal insured consumers would be significant. *Id.* at 21.

Laborers Trust's own reimbursement data confirms this conclusion █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

### d. Manufacturers' Varied Rebates and Cost Sharing

The cost of a prescription drug to a third party payer is affected by, among other things, the amount of rebates the third party payer receives from a manufacturer and the amount of the prescription drugs cost that is shared by the insured consumer (e.g., through a co-pay). Dr. Rausser previously has conceded that third party payers may not be harmed by an alleged generic delay depending on changes to manufacturer rebates and consumer cost sharing after generic entry. To test whether any harm was likely here, Dr. Rausser applied a "sensitivity analysis" that only varied the level of rebates and co-pays. WC IPP Opp. at 22. His impact

conclusion for third party payers rests on this analysis.

But this conclusion is flawed for two reasons. First, the "sensitivity analysis" itself is flawed because it ignores other individualized variables that affect third-party payer costs, such as the role of self-funding caps and varying risk-sharing agreements, incidence of brand-loyal patients, and the impact of free samples that affect the cost of drugs to third-party payers. Cremieux Decl. ¶ 75; Cremieux Surrebuttal ¶ 26.  Second, Dr. Rausser's "sensitivity analysis" actually shows that many third party payers would be not impacted by Defendants' conduct, if Dr. Rausser's assumptions were replaced with reasonable alternatives.  WC IPP Opp. at 21–22.[12]

### e.     Third Party Payers Enter into Complex Risk Sharing Agreements, Which Are Highly Individualized

Determining which party bore the responsibility for a reimbursement is crucial for assessing antitrust impact, but Laborers Trust offers no method for assessing responsibility on a class-wide basis.  WC IPP Opp. at 22–23.  As noted, Laborers Trust's own documents, and abundant other evidence, show that the Court would need to undertake a contract by contract, transaction by transaction, analysis to determine which parties actual paid which portion of each reimbursement transaction.  *See* Section I.B above (discussing failure to satisfy ascertainability requirement).

### f.     Third Party Payers Pass On Overcharges through Premiums

We previously showed that third party payers in general, and the Florida and Nevada indirect purchaser plaintiff (IBEW) in particular, were not harmed because they passed on any alleged overcharge through premiums charged to others.  WC IPP Opp. at 23–24.  ███████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

---

[12] Moreover, Dr. Rausser's own analysis shows periods in which third-party payers would not be harmed by a delay in generic entry.  Cremieux Surrebuttal ¶ 22.

███████████████████[13]   Individualized inquiries thus are necessary to determine whether third party payers passed on any alleged overcharges.

### 3.    Individual Issues Predominate with Respect to Damages

Dr. Rausser's damages assessment for Laborers Trust is the same as the one he used for the IPPs. Dr. Rausser's approach fails because he does not offer a method by which class members' damages could be proven with common evidence:  (1) Dr. Rausser uses national data that masks price variation at the state level;[14] (2) Dr. Rausser's "fluid recovery" or aggregate damages methodology is not capable of calculating individual class member damages and improperly seeks to defer to an undefined claims administration the unveiling of a methodology for calculating class member damages; and (3) Dr. Rausser inflates the number of generic products hypothetically purchased in the but-for world, which overstates damages. WC IPP Opp. at 24–27.  These flaws, individually and collectively, show Laborers Trust has not satisfied Rule 23(b)(3).

### B.    Class Treatment Is Not the Superior Method of Adjudication

Class treatment is not the superior method of adjudication for the reasons set forth on pages 27–28 of Warner Chilcott's opposition to IPPs' amended motion for class certification.

## VI.    LABORERS TRUST'S PROPOSED INJUNCTIVE RELIEF CLASS FAILS TO SATISFY RULE 23(b)(2)

Laborers Trust proposes the same nationwide injunctive relief class as IPPs and joins IPPs amended motion without further elaboration.  Mot. at 2.  The proposed injunctive relief

---

[13] 

Cremieux Second Supp. Decl. (Ex. 1) n.67 (variation between national average and California are similar to the variation found for Florida and Nevada).

class does not satisfy Rule 23(b)(2), as explained on pages 28–30 of Warner Chilcott's opposition to IPPs' amended motion or class certification.

## **CONCLUSION**

For the reasons set forth above, Plaintiff Laborers Trust's Motion for Class Certification should be denied.

Respectfully submitted this 30th day of May, 2014.

By: /s/ J. Mark Gidley                             By: /s/ Edward D. Rogers

J. Mark Gidley  
Peter J. Carney  
WHITE & CASE LLP  
701 Thirteenth Street, NW  
Washington, DC 20005-3807  
Telephone No.: 202-626-3600  
Fax No.: 202-639-9355  
mgidley@whitecase.com  
pcarney@whitecase.com  

and  

Jack E. Pace III  
Michael J. Gallagher  
WHITE & CASE LLP  
1155 Avenue of the Americas  
New York, New York 10036-2787  
Telephone No.: 212-819-8200  
Fax No.: 212-354-8113  
jpace@whitecase.com  
mgallagher@whitecase.com  

Edward D. Rogers  
Jonathan Satinsky  
BALLARD SPAHR LLP  
1735 Market Street  
Philadelphia, Pennsylvania 19103-7599  
Telephone No.: 215-665-8500  
Fax No.: 215-864-8999  
rogerse@ballardspahr.com  
satinskyj@ballardspahr.com  

*Attorneys for Defendants Warner Chilcott Public Limited Company, Warner Chilcott, LLC, Warner Chilcott (US), LLC, and Warner Chilcott Holdings Company III, Ltd.*

<u>CERTIFICATE OF SERVICE</u>

I, Celia A. McLaughlin, hereby certify that on May 30, 2013, I caused true and correct copies of Defendant Warner Chilcott's Opposition to Indirect Purchaser Plaintiff Laborers Health and Welfare Trust Fund for Northern California's Motion for Class Certification to be served by electronic mail upon all counsel of record.


By: <u>/s/    Celia A. McLaughlin        </u>

Celia A. McLaughlin
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone No.: 202-636-3600
Fax No.: 202-639-9355
cmclaughlin@whitecase.com