

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

1700 K Street, NW, Fifth Floor
Washington, D.C. 20006-3817
PHONE 202.973.8800
FAX 202.973.8899
www.wsgr.com

December 11, 2014

**VIA CM/ECF**

The Honorable Paul S. Diamond
United States District Judge
Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106

   Re: *Mylan Pharmaceuticals Inc. v. Warner Chilcott Public Ltd. Co., et al.*,
      Civ. No. 12-3824 (Consolidated)

Dear Judge Diamond:

   On behalf of Mylan Pharmaceuticals Inc. ("Mylan"), we write to bring to the Court's attention a recent decision of the United States District Court for the Eastern District of Pennsylvania (Goldberg, J.) in *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, MDL No. 2445 ("*Suboxone*") as supplemental authority in support of Mylan's Motion for Summary Judgment, Dkt. No. 553 and Mylan's Opposition to Defendants' Motion for Summary Judgment, Dkt. No. 588.[1]

   In *Suboxone*, putative classes of direct purchaser plaintiffs and end-user plaintiffs (collectively, "*Suboxone* Plaintiffs") alleged that the defendant, Reckitt Benckiser, Inc. ("Reckitt"), a brand drug company, switched the market from Suboxone tablets to Suboxone film to avoid generic competition for the tablet product. On December 3, 2014, Judge Goldberg denied the *Suboxone* defendant's motion to dismiss plaintiffs' claims regarding product hopping. The Opinion and Order are attached for the Court's convenience as Exhibits 1 and 2.

   First, Judge Goldberg rejected Reckitt's argument that introduction of a new product is per se lawful. *Suboxone* at 14-18 (citing, *inter alia*, Herbert Hovenkamp, Mark D. Janis & Mark A. Lemley, *IP and Antitrust*, § 21). Judge Goldberg concluded that claims that a brand drug company introduced a new product for the purposes of reducing generic competition, and took steps to achieve that end, are viable under federal antitrust law. *Suboxone* at 18-22. In reviewing the relevant case law, Judge Goldberg noted that the appropriate standard of review is

---

[1] Although Judge Goldberg's decision comes on a motion to dismiss, it is relevant to the motions for summary judgment pending in *Mylan Pharmaceuticals v. Warner Chilcott Public Ltd. Co., et al.*, Civ. No. 12-3824 (Consolidated) ("*Doryx*"). Judge Goldberg's discussion of the relevant law, including Third Circuit precedent, included cases for which a full factual record was before the court. *See, e.g.*, *Suboxone* at 21 (citing *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005) and *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)).

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Paul S. Diamond
December 11, 2014
Page 2

the rule of reason analysis under *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001), "where the defendant's procompetitive justifications are weighed against the anticompetitive results." *Id.* (citing *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006) ("*TriCor*")). The same standard should be applied in *Doryx*. Dkt. No. 553 at 37-40.

Next, Judge Goldberg discussed *TriCor*, a case in which the court denied defendant's motion to dismiss and found that product hopping is a viable theory under the Sherman Act. 432 F. Supp. 2d at 421-22. Judge Goldberg noted that the *Suboxone* Plaintiffs' factual allegations fell "somewhere between" the facts alleged in *TriCor* and those alleged in *Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.*, 534 F. Supp. 2d 146 (D.D.C. 2008), a case relied upon by Reckitt and the *Doryx* Defendants.[2] *Suboxone* at 17; *see also* Defendants' Motion for Summary Judgment, Dkt. No. 532 at 11, 16, 47. The key question, said Judge Goldberg, is "whether the defendant combined the introduction of a new product with some other wrongful conduct, such that the comprehensive effect is likely to stymie competition, prevent consumer choice and reduce the market's ambit." *Id.* at 18. He also noted that the question must be considered in light of the "unique characteristics of the pharmaceutical market[.]" *Id.* Ultimately, Judge Goldberg concluded that the *Suboxone* facts were closer to *TriCor* than *Walgreen* because "[t]he threatened removal of the [Suboxone] tablets from the market in conjunction with the alleged fabricated safety concerns could plausibly coerce patients and doctors to switch from tablet to film," thus reducing consumer choice. *Id.* at 19.

As we have presented in our summary judgment motion, the evidence in *Doryx* shows that Warner Chilcott and Mayne withdrew Doryx capsules from the market prior to generic entry and took additional steps to convert prescriptions and switch the market to Doryx tablets, thereby reducing consumer choice. Dkt. No. 553 at 11-15, 40-42. These steps included a coordinated campaign in which Defendants spent millions of dollars buying back and destroying Doryx capsules as well as circulating marketing materials about the market switch to retailers, wholesalers, and physicians. *Id.*

Additionally, Judge Goldberg was not persuaded by Reckitt's argument that its conduct was not exclusionary because a generic company could have competitively sold a generic Suboxone tablet even after it had withdrawn the brand tablet from the market. *Suboxone* at 21. Warner Chilcott and Mayne have made the same argument in *Doryx*.[3] Defendants' Motion for Summary Judgment, Dkt. No. 532, at 48-49. Judge Goldberg rejected that argument, stating that

---

[2] In *Walgreen*, the court dismissed plaintiffs' claims in part because the defendant brand drug company had not withdrawn the old formulation of a drug upon introduction of a new formulation, and thus consumer choice was not reduced. 534 F. Supp. 2d at 150-52. Judge Goldberg found that Reckitt's withdrawal of the prior formulation, plus other wrongful conduct, sufficiently distinguished *Suboxone* from *Walgreen*. *Suboxone* at 17-18.

[3] The Third Circuit has rejected this argument, stating "[t]he test is not total foreclosure, but whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit." *Dentsply*, 399 F.3d at 191.

WSGR  Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Paul S. Diamond
December 11, 2014
Page 3

given the "market forces unique to the pharmaceutical industry," *Suboxone* plaintiffs sufficiently alleged that generic substitution is a cost-efficient competition mechanism and Reckitt had thwarted this mechanism, thereby illegally excluding competition. *Suboxone* at 15, 21-22. Mylan has adduced substantial evidence in *Doryx* that supports the same conclusion. *See* Dkt. No. 553 at 50-53.

Dated: December 11, 2014

Joseph M. Donley
**CLARK HILL PLC**
One Commerce Square
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 640-8500
Fax: (215) 640-8501

Respectfully submitted,

**s/ Seth C. Silber**
Seth C. Silber
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street, N.W.
5th Floor
Washington, D.C. 20006
Tel: (202) 973-8800
Fax: (202) 973-8899

Jonathan M. Jacobson
Michael S. Sommer
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 497-7758
Fax: (212) 999-5899

*Counsel for Plaintiff Mylan Pharmaceuticals Inc.*